Willie J. RUDD, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00156–CR.

Court of Appeals of Texas,
Texarkana.

March 26, 1996.

Rehearing Overruled April 23, 1996.

Al T. Davis, Marshall, for appellant.

Kevin McCarter, Harrison County Asst. District Attorney, Marshall, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

CORNELIUS, Chief Justice.

Willie Rudd appeals his conviction for aggravated assault on a peace officer. The

1. *Sanders v. State,* 771 S.W.2d 645 (Tex.App.–El

jury assessed his punishment at fifteen years' imprisonment.

Police officers responded to a complaint about gunfire at Rudd's residence. When the officers arrived, Rudd was sitting on his porch with a shotgun nearby. As two officers approached him, Rudd moved into the house, taking the shotgun with him. Rudd fired at the officers from the house, and they returned the fire. Rudd was charged with aggravated assault on a peace officer. At his trial he relied on an insanity defense.

■ Rudd contends that a statement by the prosecutor during final argument constituted reversible error. He complains because he says the statement informed the jury of the effect of their verdict if they found him not guilty by reason of insanity. The prosecutor, in concluding his argument that Rudd was faking the symptoms of insanity, stated, "And he does it because he knows from the dealings with these doctors that if you play crazy, you may get to go to that door and walk out of this courtroom." Rudd's counsel objected to the statement because it was a misstatement of the law and because it informed the jury of the effect of their verdict. *See Robison v. State,* 888 S.W.2d 473, 476 (Tex.Crim.App.1994).

TEX.CODE CRIM.PROC.ANN. art. 46.03, § 1(e) (Vernon Supp.1996) provides:

The court, the attorney for the state, or the attorney for the defendant may not inform a juror or a prospective juror of the consequences to the defendant if a verdict of not guilty by reason of insanity is returned.

Thus, it was error to allow the statement. The statement is not necessarily correct, because it suggests that if found not guilty by reason of insanity, Rudd would be absolutely free in the community, when in fact he would be transferred to the appropriate court for a hearing on the appropriateness of civil commitment proceedings. TEX.CODE CRIM.PROC. ANN. art. 46.03, § 4 (Vernon Supp.1996).

A similar situation was reviewed in *Sanders v. Lynaugh,* 714 F.Supp. 834, 837 (W.D.Tex.1988).[1] In that case, the prosecu-

Paso 1989, pet. ref'd).

tor had argued to the jury that the question was whether or not the defendant should be "cut loose because he was insane at the time." The district court held that such a statement was improper and prejudicial. The court recognized that, under federal habeas corpus standards, it could grant relief only if the argument was so prejudicial that it rendered the trial fundamentally unfair and violated the defendant's right to due process of law. The court eventually concluded that it did so and ordered a new trial. The court based its analysis upon the cases of *Guidroz v. Lynaugh*, 852 F.2d 832 (5th Cir.1988), and *United States v. Williams*, 523 F.2d 1203, 1210 (5th Cir.1975).

The only distinction we can perceive between this case and *Sanders* or *Guidroz* is the number of times that the prosecutor made the improper statement. In each of those habeas corpus proceedings, the prosecutor in the underlying trial had repeatedly stated in numerous contexts that the defendant would be cut loose to wreak havoc on society, and the repetition of the argument was cited as a factor in each case for the decision to grant habeas corpus relief.

*Williams* was a direct appeal from a conviction for kidnapping. The United States Court of Appeals for the Fifth Circuit noted and discussed a series of statements by the prosecutor during final argument to the effect that the defendant was "a put-on" who, if found not guilty, would be given a "blank check" to go out and commit crimes against the judge, the jurors, and their families.

■ The error is reversible unless we find beyond a reasonable doubt that it made no contribution to the conviction or the punishment. TEX.R.APP.P. 81(b)(2). In determining whether improper prosecutorial jury argument is harmless, we must calculate the probable impact of the error on the jury in light of the entire record. *Coble v. State*, 871 S.W.2d 192 (Tex.Crim.App.1993). In conducting the harm analysis, we consider the nature and source of the error, the degree to which the improper argument was emphasized, the probable collateral implications of the error, the probable weight a juror may

have placed on the improper argument, and whether a holding of harmlessness would encourage repetition of the error. *Coble v. State, supra; Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). Overwhelming evidence of the defendant's guilt is a variable that we may consider in making this analysis. *Orona v. State*, 791 S.W.2d 125, 130 (Tex.Crim.App.1990).

■ In this case, the nature of the error is not egregious. Indeed, the comment does not explicitly state that Rudd would be absolutely free in the community; it only implicitly suggests it. The record, in context, indicates that the prosecutor had no improper motive in making the comment, but did so out of a misapprehension of the law regarding the argument. The comment was made only once, briefly, and was not repeated or emphasized. There is little chance that a finding of harmlessness here would encourage a repetition of the error, because the error was not a calculated improper ploy, and the prosecution will know in future cases that such a comment is impermissible. Finally, the evidence of Rudd's guilt and his sanity is overwhelming, so there is little likelihood that the comment had any effect on the jury.

Two doctors testified about Rudd's mental faculties. Rudd's own doctor testified at length about Rudd's mental disabilities, but he also acknowledged that in his opinion Rudd knew right from wrong at the time of the offense. The State's expert witness also testified that he believed Rudd knew right from wrong at the time of the offense. There is evidence that Rudd had mental difficulties and emotional instability, but there is none that shows he was insane as that term is defined in Texas law. Rudd did not contest the shooting, although he contended he did not know he was shooting at officers. We conclude that the error made no contribution to the conviction or the punishment.

■ Rudd next contends that the trial court erred in the form of its submission of the jury charge. The court submitted the presumption contained in TEX.PENAL CODE ANN. § 22.02(b).[2] This section states that:

**2.** Act of May 24, 1973, 63rd Leg., ch. 399, § 1,

1973 Tex.Gen.Laws 919, *amended by* Act of May

The actor is presumed to have known the person assaulted was a peace officer if he was wearing a distinctive uniform indicating his employment as a peace officer.

Rudd does not contend that the submission of this charge was error, but contends that it was error to fail to also submit the elements contained in Section 2.05 of the Penal Code, which provides that where a presumption is established by the Penal Code with respect to any fact, if the existence of that presumed fact is submitted to the jury, then the court shall charge the jury on reasonable doubt. Tex.Penal Code Ann. § 2.05 (Vernon 1994).[3] No objection was made to this omission at trial. Under *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984), when a charge error has not been objected to, as in this case, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. We are to determine harm in light of the entire jury charge, the state of the evidence, including contested issues, and the weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record as a whole. The purpose of this review is to eliminate the actual and not just the theoretical harm to the accused. *Id.* at 174.

■ Both officers testified at trial. One was a patrol captain for the Harrison County Sheriff's Department, and the other was a trooper with the Department of Public Safety. They arrived at Rudd's house in separate cars at approximately the same time. Both cars were clearly marked as law enforcement vehicles, and each officer testified that he was in his respective uniform. They testified that they were attempting to talk to

Rudd at a distance of fifteen to twenty feet. Captain Walker also testified that both his marked squad car and the marked DPS car were parked in front of the house and that they first tried to talk to Rudd while behind their automobiles, thus also indicating that the vehicles were readily visible to Rudd. The only evidence to the contrary is a statement by Dr. Willard Gold, the State's expert, in recounting his interview with Rudd. He testified that Rudd had told him that the officer shooting at him was not in uniform, so he did not know it was the police.

Although the trial court erred by not giving the requisite charge under Section 2.05 of the Penal Code, the harm to the defendant cannot be described as egregious or in any way damaging to his right to a fair and impartial trial. The great weight of the evidence before the jury showed that the officers were physically close to Rudd, in uniform, after arriving in marked police cars. Thus, there is only minimal evidence to counteract the presumption established by Section 22.02(b).

■ Rudd next contends that the trial court erred by denying his motion for mistrial because of evidence about an extraneous offense introduced at the guilt/innocence phase of the trial. Dr. Gold, the State's expert on insanity, said in his testimony that Rudd had been, "first arrested at age seven for...." At that point defense counsel objected, and Dr. Gold did not comment further about the matter.

■ The general rule is that at the guilt/innocence phase extraneous offenses are not admissible to show action in conformity

29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen.Laws 3619, current version found at Tex.Penal Code Ann. § 22.02(c) (Vernon 1994).

3. Tex.Penal Code Ann. § 2.05 (Vernon 1994) reads in part as follows:

   When this code or another penal law establishes a presumption with respect to any fact, it has the following consequences:

   ....

   (2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

with bad character. *Montgomery v. State,* 810 S.W.2d 372, 386 (Tex.Crim.App.1990) (opinion on rehearing). Evidence of extraneous offenses is admissible for certain other specific purposes, but none of those was applicable in this case. Thus, the evidence was not admissible. The trial court, however, immediately sustained counsel's objection to this statement and then instructed the jury not to consider the statement for any purpose. An instruction to disregard improper evidence will cure the error except in extreme cases where the evidence is clearly calculated to inflame the minds of the jury and is such that it suggests the impossibility of withdrawing the impression produced on the jurors' minds. *Livingston v. State,* 739 S.W.2d 311 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

In this case, the prompt objection by counsel prevented the witness from giving the reason for the arrest, mentioning what crime he was arrested for, or giving the result of the charge. Thus, we find that it is not of such character as to make the instruction ineffective to cure the error.

The judgment of the trial court is affirmed.