**Bobby Joe ELLISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00186–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 17, 2001.

Decided June 5, 2001.

Rehearing Overruled June 26, 2001.

R. Clement Dunn, Longview, for appellant.

C. Patrice Savage, Asst. Dist. Atty., Longview, for state.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

A jury convicted Bobby Joe Ellison of aggravated robbery.[1] The jury assessed his punishment at ninety-nine years in

1. Tex. Pen.Code Ann. § 29.03 (Vernon 1994).

prison and a $5,000 fine. On appeal Ellison contends that the trial court committed reversible error by admitting evidence of extraneous offenses at the punishment phase of the trial and by failing to instruct the jury, *sua sponte,* on the burden of proof required for such offenses. Ellison also alleges that his trial counsel rendered ineffective assistance by failing to object and request instructions regarding the admissibility of the extraneous offenses. Because we find that the admission of extraneous offense evidence during the punishment phase prejudiced Ellison, we affirm his conviction, but reverse and remand the cause for a new trial on punishment.

At about 5:15 p.m. on August 24, 1999, Diane Turner was leaving her place of employment when she was attacked by a disguised assailant, later identified as Ellison. Ellison brandished a gun and ordered Turner not to move. Shortly thereafter, Ellison struck Turner to the point of rendering her unconscious, and he fled with her 1999 Toyota as well as her purse. When Turner regained consciousness, she walked about a quarter of mile to seek assistance at Trinity Industries. Jerry Elliott, the emergency care attendant for Trinity, tended to Turner while the plant superintendent called 9–1–1. Turner was subsequently taken to the hospital. She had sustained a skull fracture and laceration requiring nine stitches, two large bumps on the side of her head, and a cut under her eye. Gregg County Sheriff's deputies interviewed Turner, and she gave them a description of the assailant. They put out a five-state look-out bulletin the following evening. Mike Claxton, investigator for the Gregg County Sheriff's Department, was notified by representatives of Rusk County that a deputy was pursuing a suspect vehicle and that in order to stop the vehicle they had to "spike it out."[2] Once the vehicle was stopped, Ellison got out and fled into a nearby wooded area. Various law enforcement agencies joined the search for Ellison, including the Federal.Bureau of Investigation, the Texas Rangers, local authorities, and a Department of Public Safety helicopter crew. Ellison was eventually apprehended. After appearing before magistrates in both Rusk and Gregg Counties, Ellison was transported to the Gregg County Sheriff's Department. During his detention, Ellison agreed to make a statement. In his statement, Ellison said that after happening upon Turner, he hit her with the back of his hand and with a nine millimeter Ruger, and then fled the scene in her vehicle. He went on to state that he drove the vehicle around to pick up both rock and powder cocaine, as well as methamphetamine.

 Ellison contends that the trial court erred in admitting evidence of extraneous offenses during the punishment phase of the trial when the State failed to prove beyond a reasonable doubt that he committed the extraneous acts. He further contends that the trial court erred by failing to *sua sponte* instruct the jury that before it could consider the extraneous offense evidence, it must find that the State had proved those acts beyond a reasonable doubt. The extraneous offenses proffered during the punishment phase consisted of Ellison's involvement in the burglary of a Blanco County constable's vehicle, during which various items were removed, including a rifle and handgun, as well as his involvement in the Aryan Brotherhood and various hate crimes in North Carolina and

---

**2.** Claxton testified that the "spike out" device consists of a row of spikes placed across a roadway. The fleeing vehicle then runs over the spikes, which cause the vehicle's tires to rapidly deflate.

Missouri.[3] Evidence of extraneous crimes or bad acts is admissible during the punishment phase to the extent the trial court deems it relevant to sentencing. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2001).[4] If the State offers such evidence, the fact finder may not consider it unless satisfied beyond a reasonable doubt that the defendant committed the described acts. *Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App.1999). The issue we must determine is whether the trial court was required at the punishment phase to instruct the jury on reasonable doubt even though Ellison did not request such an instruction.

■ A reasonable doubt instruction regarding extraneous offense evidence is "law applicable to the case," and the trial court must give such an instruction even if it is not requested. *Huizar v. State*, 12 S.W.3d 479, 483–84 (Tex.Crim.App.2000) (op. on reh'g);[5] *Brown v. State*, 45 S.W.3d 228, 230 (Tex.App.—Fort Worth 2001, no pet. h.). The failure of the trial court to give the reasonable doubt instruction *sua sponte* was error.

■ Now that we have determined that the trial court erred by failing to instruct the jury on the applicable burden of proof, we must determine whether Ellison was harmed by the error. The reasonable doubt standard required by the Texas Code of Criminal Procedure for extraneous

offenses offered at the punishment phase is neither a constitutional requirement, nor is it based on a constitutional mandate. *See Fields v. State*, 1 S.W.3d at 688. Because the reasonable doubt requirement is statutory rather than constitutional, we review the failure to give the instruction under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g); *Huizar v. State*, 12 S.W.3d at 484–85; *see also* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2001). Ellison did not object to the trial court's failure to give the instruction, so we must decide whether the error was so egregious and created such harm it denied him a fair and impartial trial. *Almanza v. State*, 686 S.W.2d at 171; *see also* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996); *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd). Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991); *Hall v. State*, 937 S.W.2d 580, 583 (Tex.App.—Texarkana 1996, pet. ref'd).

■ In making this determination, we assess the degree of harm in light of the entire jury charge, the state of the evi-

---

**3.** Officer Menan Sumbling of the Blanco County Sheriff's Department testified that he arrested Ellison for the burglary of a constable's vehicle. Sumbling further testified that while booking Ellison, he found a "baggie" of marihuana in his right front pocket.

**4.** These acts were first referenced during the cross-examination of Clarence Matthews, president of Matex Wire and Rope Company, Ellison's employer of two and one-half years. Subsequently, the State called James Hersly, an agent with the Federal Bureau of Investigation, as a rebuttal witness. Hersly testified

that during an interview, Ellison admitted participating in various hate crimes in North Carolina and Missouri, including shooting a black man in the face. Hersly also testified that Ellison admitted "running drugs" in Gregg County, Texas.

**5.** In *Huizar v. State*, the Texas Court of Criminal Appeals distinguished its holding in *Mitchell v. State*, 931 S.W.2d 950 (Tex.Crim. App.1996), where it said the instruction must be given "when requested."

dence, including the contested issues and weight of probative evidence, the argument of counsel, and all other relevant information revealed by the record as a whole. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998); *Almanza v. State*, 686 S.W.2d at 171; *Rudd v. State*, 921 S.W.2d at 373. We engage in this assessment to illuminate the actual, not just the theoretical, harm to the accused. *Almanza v. State*, 686 S.W.2d at 174; *Hines v. State*, 978 S.W.2d 169, 175 (Tex. App.—Texarkana 1998, no pet.); *Rudd v. State*, 921 S.W.2d at 373. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d at 171.

■ The record shows that Ellison's aggravated robbery of Turner was particularly heinous in light of the injuries she suffered. The evidence of his guilt is more than sufficient to sustain a conviction. We cannot speculate as to what punishment the jury would have assessed without the evidence of the extraneous offenses, but we conclude that the evidence made the case for serious punishment significantly more persuasive to the jury. Hersly's testimony that he worked on violent crimes, including domestic terrorism like the Oklahoma City bombing, in conjunction with his testimony about Ellison's involvement in well-known hate groups and his commission of hate crimes, impermissibly influenced the jury by casting an authoritative shadow over Ellison's character. Accordingly, we cannot say with fair assurance that the sentence was not substantially affected by the error. *Fowler v. State*, 958 S.W.2d 853, 865 (Tex.App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999).

In light of the dispositive nature of this point of error, we do not reach the issue of whether Ellison's trial counsel rendered ineffective assistance at the punishment stage of the trial.

For the reasons stated, we affirm the conviction, but reverse and remand the cause to the trial court for a new trial on punishment only.