In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00111-CR
______________________________


ISAIAH SCOTT BOONES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2003-C-157-CCL


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Isaiah Scott Boones appeals from his conviction for aggravated assault with a
deadly weapon. Following a jury trial, Boones pled true to the enhancements for two prior
felony convictions. The trial court sentenced Boones to eighty years' imprisonment
consistent with the jury's assessment. On appeal, Boones argues the trial court erred by
1) failing to dismiss the entire array after sustaining a Batson challenge, 2) excluding a
qualified juror from serving as the alternate juror after returning a challenged juror to the
array, and 3) failing to correctly instruct the jury concerning parole. Because the trial
court's remedy to the Batson challenge was not error, because any error concerning the
alternate juror was harmless, and because Boones has failed to show the parole instruction
resulted in egregious harm, we affirm. 
          1) The Trial Court Did Not Err In Failing To Dismiss the Entire Array
          In his first point of error, Boones contends Article 35.261 of the Code of Criminal
Procedure required the trial court to call a new array once it found that a juror had been
struck from the jury due to his race. See Tex. Code Crim. Proc. Ann. art. 35.261 (Vernon
1989). Boones argues the trial court erred by reinstating the juror rather than calling a new
array.
          During voir dire, the State used its peremptory strikes to strike six of the eight
African-American jurors within strike range. Boones objected based on Batson v.
Kentucky, 476 U.S. 79 (1986). The State provided reasons for striking each of the six
jurors. The only reason the State provided for striking juror Larry Tyrone Harris, however,
was that Harris failed to completely fill out his juror questionnaire. The defense pointed out
that, because Harris stated he was single, the only sections not filled in were the
occupation and work telephone number. Harris did list an employer. The defense also
pointed out there were other jurors, not African-American, who also failed to fill out their
questionnaires completely and who were not struck. The State initially said the failure to
complete the questionnaire was the only reason for striking Harris. After reviewing the
questionnaire, the trial court asked the State if it had any additional reasons for striking
Harris. The State responded there was a warrant for assault that was recalled on a Larry
Harris and "we think that it was him." The trial court found that the State provided race-neutral explanations for all the strikes except Harris and ordered that Harris be reinstated
on the jury panel. Boones did not request the trial court to dismiss the panel and call a new
array, nor did Boones object to the trial court's failure to dismiss the array pursuant to
Article 35.261.
          A party is prohibited under the Equal Protection Clause from using peremptory
challenges to exclude otherwise qualified and unbiased persons from a jury solely on the
basis of their race. Id. at 88. The Texas Legislature has codified the Batson rule in Tex.
Code Crim. Proc. Ann. art. 35.261. A Batson challenge consists of three steps. Ford v.
State, 1 S.W.3d 691, 693–94 (Tex. Crim. App. 1999) (citing Purkett v. Elem, 514 U.S. 765
(1995)). First, the party challenging the strikes must make a prima facie case of
discrimination by showing that the totality of the relevant facts gives rise to an inference of
discriminatory purpose. Batson, 476 U.S. at 93–94. The burden then shifts to the
proponent of the strike to make a reasonable race-neutral explanation for the strike. Id.;
Williams v. State, 937 S.W.2d 479, 485 (Tex. Crim. App. 1996). As long as no
discriminatory intent is inherent in the explanation given, the explanation need not be
persuasive or even plausible. Purkett, 514 U.S. at 768; Williams, 937 S.W.2d at 485. 
Third, if the proponent of the strike produces a race-neutral reason for the strike, the party
making the challenge shoulders the burden of proving intentional discrimination. Purkett,
514 U.S. at 768; Williams, 937 S.W.2d at 485. "At this stage, 'implausible or fantastic
justifications may (and probably will) be found to be pretexts for purposeful discrimination.'"
Miller-El v. Cockrell, 537 U.S. 322, 339 (2003) (citing Purkett, 514 U.S. at 768). The trial
court must determine whether the party making the challenge carried the burden of
persuasion by proving purposeful discrimination. Miller-El, 537 U.S. at 339; Purkett, 514
U.S. at 767. In this case, the trial court found the State improperly exercised a peremptory
challenge on Harris. The issue raised in this case is whether the trial court's remedy was
appropriate.
          The United States Supreme Court explicitly declined to instruct courts as to the
appropriate remedy when a juror is struck due to race. Batson, 476 U.S. at 99. After the
Supreme Court's decision in Batson, the Texas Legislature enacted Article 35.261, which
provides only one remedy—dismissal of the entire panel. See Tex. Code Crim. Proc. Ann.
art. 35.261. That article provides, "If the court determines that the attorney representing
the state challenged prospective jurors on the basis of race, the court shall call a new array
in the case." Tex. Code Crim. Proc. Ann. art. 35.261(b). The Texas Court of Criminal
Appeals has since noted that the remedy provided for by Article 35.261 "may be
unconstitutionally restrictive." State ex rel. Curry v. Bowman, 885 S.W.2d 421, 424 (Tex.
Crim. App. 1993). The court reasoned that dismissing the entire array is "not a just and
reasonable vindication of a prospective juror's right" and held that the trial court "may
fashion a remedy in its discretion consistent with Batson and its progeny." Id. at 425. In
Bowman, the Texas Court of Criminal Appeals held that the decision to reinstate the
excluded veniremembers to the jury was an acceptable remedy. Id. As in this case, the
defendant in Bowman did not expressly assert any statutory rights. Id. "[T]he remedy
prescribed by article 35.261 is not exclusive" and "a trial court is authorized to remedy a
Batson error by reinstating the excluded venire member to the trial jury." Craig v. State,
82 S.W.3d 451, 453 n.1 (Tex. App.—Austin 2002, pet. ref'd). The trial court did not abuse
its discretion by reinstating the excluded potential juror to the jury. We overrule Boones'
first point of error.
          2) Any Error in the Selection of the Alternate Juror Was Harmless
          Boones contends the trial court erred by not designating Randy Graves as the
alternate juror instead of Dena Holmes. When the trial court reinstated Harris, the
alternate juror was not changed. Graves, who had previously been the twelfth juror and
was now the thirteenth potential juror, was not called as the alternate. Instead, Dena
Holmes, who had been designated the alternate juror before Harris was reinstated, was
still designated as the alternate juror. Boones argues that the trial court erred by not
changing the alternative juror and that its actions, in effect, gave the State an extra
peremptory challenge.
          Boones' argument essentially challenges the procedure used by the trial court in
selecting the alternate juror. The trial court used a different procedure other than simply
accepting the thirteenth potential juror as the alternate juror. This procedure was likely
motivated by the requirements of the Government Code in selecting an alternate juror. 
Section 62.020(e) of the Government Code grants an additional peremptory strike if one
alternate is selected, but it explicitly limits the use of this additional strike to the selection
of the alternate juror. Tex. Gov't Code Ann. § 62.020(e) (Vernon 2005). Further, the
Government Code prohibits the use of other peremptory challenges allowed by law or by
rule against an alternate juror. Id. Section 62.020(e) provides:
Each side is entitled to one peremptory challenge in addition to those
otherwise allowed by law or by rule if one or two alternate jurors are to be
impaneled. Each side is entitled to two peremptory challenges in addition to
those otherwise allowed by law or by rule if three or four alternate jurors are
to be impaneled. The additional peremptory challenges may be used against
an alternate juror only, and the other peremptory challenges allowed by law
or by rule may not be used against an alternate juror.

Id. The additional peremptory strikes and the limitations on which peremptory strikes may
be used to select the alternate juror likely motivated the trial court to follow the procedure
that it did.
          The trial court calculated the potential strike range for the jury panel and then
designated the next three jurors on the list as the permissible range for alternates. First,
the trial court determined the last possible potential juror who could serve on the jury. 
Because one potential juror was excused and each side had ten peremptory strikes, the
last possible juror who could serve on the jury was the thirty-third potential juror. The trial
court then designated the next three potential jurors as the range where the parties could
exercise their one additional peremptory challenge. Because the range of alternate jurors
was separate from the range of jurors eligible for the jury, the reinstatement of Harris did
not affect the designation of Holmes as the alternate. Although the State argues this
method is the only logical procedure that will comply with the Government Code's
provisions, it is not necessary we reach that conclusion in this case.
          Even if the trial court's procedure was in error, Boones has failed to show the
alleged error resulted in harm. The alternate juror was dismissed without serving on the
jury. Therefore, the error, if any, was clearly harmless. See Tex. R. App. P. 44.2. We
overrule Boones' second point of error.
          3) No Egregious Harm Shown Concerning the Parole Instruction
          Boones contends in his third point of error the trial court erred in giving the jury an
instruction concerning parole law which differs from the standard parole instruction
contained in Article 37.07 of the Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 42.12, § 3g(a)(1) (Vernon Supp. 2004–2005). According to Boones, the trial court
committed reversible error because the instruction is mandatory.
          The instruction given to the jury differed from the language required by the rule. 
Specifically, the instruction omitted part of the discussion about good conduct time. The
charge required by Article 37.07, § 4(a) reads as follows:
Under the law applicable in this case, the defendant, if sentenced to
a term of imprisonment, may earn time off the period of incarceration
imposed through the award of good conduct time. Prison authorities may
award good conduct time to a prisoner who exhibits good behavior, diligence
in carrying out prison work assignments, and attempts at rehabilitation. If a
prisoner engages in misconduct, prison authorities may also take away all or
part of any good conduct time earned by the prisoner.
 
It is also possible that the length of time for which the defendant will
be imprisoned might be reduced by the award of parole. 

                     . . . .
 
Under the law applicable in this case, if the defendant is sentenced to
a term of imprisonment, he will not become eligible for parole until the actual
time served equals one-half of the sentence imposed or 30 years, whichever
is less, without consideration of any good conduct time he may earn. If the
defendant is sentenced to a term of less than four years, he must serve at
least two years before he is eligible for parole. Eligibility for parole does not
guarantee that parole will be granted.
 
It cannot accurately be predicted how the parole law and good
conduct time might be applied to this defendant if he is sentenced to a term
of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.
 
You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.

Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2004–2005). "[T]he over-all
purpose of the instruction is to inform jurors of these concepts as a general proposition, but
to prohibit the jury from using its notions of parole or 'good conduct time' in any calculus
in assessing the appropriate punishment." Luquis v. State, 72 S.W.3d 355, 360 (Tex.
Crim. App. 2002). The Texas Court of Criminal Appeals has warned against deviating from
the language of the statute. See id. at 363. The trial court has a mandatory duty to instruct
the jury with the statutory charge. See id. The charge given to the jury in this case omitted
the instruction concerning the accrual of good conduct time by a prisoner. However, the
charge did inform the jury that it was not permitted to consider the extent that good conduct
time may be awarded to Boones. The charge given to the jury reads in pertinent part: 
Under the law applicable in this case, if the defendant is sentenced to
a term of imprisonment, he will be [sic] not become eligible for parole until
the actual time served equals one-half of the sentence imposed or thirty (30)
years, whichever is less, without the consideration of any good conduct time
he may earn. Eligibility for parole does not guarantee that parole will be
granted.

                     . . . .
 
You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.

          We review errors in the jury charge using the standard set out in Almanza. Brown
v. State, 122 S.W.3d 794, 803 (Tex. Crim. App. 2003); see Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The standard of review for errors in the
jury charge depends on whether the defendant properly objected. Almanza, 686 S.W.2d
at 171. If a proper objection was raised, reversal is required if the error is "calculated to
injure the rights of defendant." Id. In other words, an error that has been properly
preserved is reversible unless it is harmless. Id. If a defendant does not object to the
charge, reversal is required only if the harm is so egregious the defendant has not had a
fair and impartial trial. Rudd v. State, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996,
pet. ref'd). 
          While Boones did object to the charge, his objection concerned the inclusion of an
instruction on parole law, rather than an objection to the content of the instruction. To
preserve error for appellate review, the complaining party must make a timely, specific
objection explaining the grounds for the objection, if the grounds are not apparent from the
context. Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). The issue raised on
appeal must correspond to the objection made at trial. Id. At trial, Boones made the
following objection: "Judge, other than a general objection to the Charge, a specific one,
that's the inclusion of the parole law, we don't have any other objections at this time." 
Although "no technical considerations or form of words" are necessary, the defendant is
required to "let the trial judge know what he wants, why he thinks himself entitled to it, and
to do so clearly enough for the judge to understand him at a time when the trial court is in
a proper position to do something about it." Lankston v. State, 827 S.W.2d 907, 909 (Tex.
Crim. App. 1992). Boones' objection is insufficient for the trial court to clearly understand
he is objecting to the charge based on its deviation from the statutory language. Because
the defense did not make a specific objection which corresponds to the complaint on
appeal, we will review the alleged charge error under the egregious harm standard.
          Where there has been no objection, we will reverse the cause only if an appellant
has shown the error caused egregious harm. Abdnor v. State, 871 S.W.2d 726, 732 (Tex.
Crim. App. 1994); Blumenstetter v. State, 135 S.W.3d 234, 240 (Tex. App.—Texarkana 
2004, no pet.). Egregious harm consists of errors affecting the very basis of the case or
that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the
case for conviction or punishment clearly and significantly more persuasive. Saunders v.
State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); Hall v. State, 937 S.W.2d 580, 583
(Tex. App.—Texarkana 1996, pet. ref'd). We determine harm in light of the entire jury
charge, the state of the evidence, including contested issues and the weight of the
probative evidence, the argument of counsel, and any other relevant information revealed
by the record as a whole. Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998);
Rudd, 921 S.W.2d at 373. The purpose is to illuminate the actual, not just the theoretical,
harm to the accused. Hines v. State, 978 S.W.2d 169, 175 (Tex. App.—Texarkana 1998,
no pet.); Rudd, 921 S.W.2d at 373.
          If it was error for the trial court to make these changes in the instruction required by
Article 37.07, the error did not result in egregious harm to Boones. In this case, the
instruction given to the jury simply omitted the explanation of good conduct time. In Bolden
v. State, the First Court of Appeals held no harm had been shown when an instruction
omitted all reference to "good conduct time." 73 S.W.3d 428, 433–34 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref'd). As the First court stated, the instruction was
intended to increase the sentences assessed by juries and does not benefit the
defendant.


 The inclusion of the instruction concerning "good conduct time" probably
would not have benefitted Boones. Further, unlike the instruction in Bolden, which
completely omitted any reference to "good conduct time," the instruction in this case
informed the jury that it was not to consider the effect of any "good conduct time" in
assessing the sentence. See id. at 433. Because we assume the jury follows the trial
court's instruction, we must assume the jury did not consider the effect of the "good
conduct time" on the defendant. See Luquis, 72 S.W.3d at 366. Boones has not directed
us to any place in the record showing that the jury discussed, considered, or attempted to
apply what it was told about "good conduct time" or showing that the jury was confused
about the possible application of "good conduct time." Boones has not shown the
instruction resulted in egregious harm. We overrule his final point of error.
Summary
          The trial court did not err in reinstating a juror after sustaining the Batson challenge
to one of the struck jurors rather than dismissing the entire array. Boones did not object
or request the dismissal of the entire panel or invoke any statutory right to have the entire
array dismissed. The trial court did not abuse its discretion by remedying the Batson
violation by reinstating the struck juror. Even if the trial court's procedure in selecting the
alternate juror was error, any such error was harmless. Finally, Boones has failed to show
the parole instruction resulted in egregious harm. 
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      March 30, 2005
Date Decided:         June 6, 2005

Publish