

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00288-CR

**RONALD TROY CALDWELL,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. F41828

## MEMORANDUM  OPINION

Ronald Troy Caldwell was found guilty by a jury of the offense of Unauthorized Use of a Motor Vehicle.  TEX. PEN. CODE ANN. § 31.07 (Vernon 2003).  After pleading true to three enhancement paragraphs, the jury sentenced Caldwell to imprisonment for twenty (20) years in the Texas Department of Criminal Justice – Institutional Division and a $10,000.00 fine.  TEX. PEN. CODE ANN. § 12.42(a)(2) (Vernon 2003).  Caldwell complains that the evidence was insufficient to sustain a conviction and that the trial court erred in denying his request for a mistrial.  Because we find the evidence is legally

and factually sufficient and the trial court did not abuse its discretion in denying Caldwell's request for a mistrial, we affirm.

*Legal and Factual Sufficiency*

In reviewing the legal sufficiency of the evidence, this Court looks at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *Bigon v. State*, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008). "[C]ourts reviewing all the evidence in a light favorable to the verdict must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review." *Evans v. State*, 202 S.W.3d 158, 165 n.27 (Tex. Crim. App. 2006) (*quoting City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005)); *accord Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006).

Under a legal sufficiency review, we consider all of the evidence admitted, both properly and improperly admitted, as well as direct and circumstantial evidence. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any or all of the evidence presented by either side. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). The reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (*citing Jackson v. Virginia*, 443 U.S. at

318-19). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can alone be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

In a factual-sufficiency review, there is only one question to be answered: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008); *Watson*, 204 S.W. 3d at 415. Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (*citing Watson*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007). "[A]n appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of the . . . evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial." *Watson*, 204 S.W.3d at 417. A reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts*, 220 S.W.3d at 524.

Although an appellate court has the ability to second-guess the jury to a limited degree, the factual-sufficiency review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur. *Grotti v. State*,

273 S.W.3d 273, 283 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 417. An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. *Watson*, 204 S.W.3d at 714. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict. *Id.* The verdict may be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Grotti*, 273 S.W.3d at 280.

Caldwell contends that the evidence was insufficient for the jury to find beyond a reasonable doubt that he operated the motor vehicle at any time. The testimony was that a dark green Cavalier was stolen from a residence approximately one mile from Caldwell's home near Burleson, Texas. Caldwell had been dropped off by his sister at his home at or before 9:00 a.m. that morning. Caldwell called his sister from Alvarado shortly thereafter, and it was impossible to walk or ride a bicycle from his home to Alvarado in that amount of time. Caldwell did not own a vehicle.

An employee of the Sonic restaurant observed the Cavalier parked in the back of the parking lot as early as 8:40 a.m. when one of them delivered a drink to him. Another employee observed Caldwell in the stolen vehicle looking through binoculars toward a bank next door to the Sonic at approximately 10:20 a.m. The first employee verified that this was the same individual and vehicle. They called the police regarding a suspicious vehicle. The employee observed the vehicle drive away prior to the police

arriving at the Sonic, and it returned at some point although the employee did not see it return.

After the police arrived, an officer saw an individual she later identified as Caldwell sitting alone in the driver's seat of the Cavalier. In court, one of the employees and the officer identified Caldwell as the individual they saw sitting in the driver's seat of the stolen car. The officer saw Caldwell turn the headlights on and off, exit the vehicle, and walk to the rear of the Sonic where she lost visual contact with him. There was only one person in the vehicle that the officer observed. The officer went to the back of the Sonic and saw that the door to the restroom was closed. She then went inside the Sonic to make contact with the two employees, and she confirmed that the description of the individual in the vehicle matched the description of the person she had observed in the vehicle. The officer returned to the restroom and waited until Caldwell came out. Caldwell started to quickly walk toward the field behind the Sonic but returned when the officer called him. After verifying his identity and that he had no warrants, Caldwell was allowed to leave. He then went into the Sonic and apologized to the employees for causing a scene before he left on foot.

That day, Caldwell told an acquaintance who gave him a ride home from Alvarado that he had borrowed a car, parked it at the Sonic, and walked to a field behind the Sonic to spy on his ex-girlfriend with his binoculars. His ex-girlfriend's residence was in view of the Sonic. Caldwell told this acquaintance that he had left his binoculars in the vehicle and walked away from the vehicle when the police arrived.

Caldwell had often come to Alvarado to meet with his ex-girlfriend at various locations. Caldwell's ex-girlfriend lived with her daughter in Alvarado. Meetings at his ex-girlfriend's residence had to take place when her daughter was not at home, because her daughter had forbidden Caldwell to come to her home.

The day this transpired was a rainy day and the interior of the car was muddy, which potentially could have come from the field adjacent to the Sonic. The officer found a pair of binoculars and a cold, partially empty drink cup from Sonic when she inventoried the vehicle.

Caldwell contends that the evidence was insufficient because no one saw him drive or operate the vehicle. Further, Caldwell contends that the evidence is insufficient because he does not fit the description of the individual described by the Sonic employees, as he is not balding. Caldwell avers that the only evidence that he operated the vehicle came from the testimony of his acquaintance, which he contends is questionable, although he does not explain why.

There is no statutory definition of "operate." *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.). However, the Court of Criminal Appeals has held, to find operation of a motor vehicle, "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). Under this standard, "operating" a motor vehicle is interpreted very broadly. *Strong v. State*, 87 S.W.3d 206, 215 (Tex. App.—Dallas 2002, pet. ref'd). Because "operating" a motor vehicle is defined so broadly, any action that is more than mere

preparation toward operating the vehicle would necessarily be an "action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use." *Id*. at 216. Juries are permitted to make reasonable inferences from the evidence presented at trial and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14-15 (Tex. Crim. App. 2007). From the circumstantial evidence, taken with the direct evidence, the jury could reasonably infer that Caldwell operated the vehicle.

Reviewing the evidence under the appropriate standards, giving deference to the jury as the determiner of facts and the credibility of the witnesses, we find the evidence both legally and factually sufficient to prove that Caldwell operated the motor vehicle. We overrule issue one.

### Denial of Mistrial

Caldwell complains that the trial court abused its discretion by denying his request for a mistrial after a police officer who was a witness for the State testified that one of the Sonic employees had not made a statement because of fear of reprisals in a non-responsive answer to a question by the State. Caldwell timely objected to the testimony and asked the trial court to instruct the jury to disregard the testimony. The trial court sustained the objection and instructed the jury to disregard the statement. There was no further testimony regarding any specific reprisals to which the officer was referring, and specifically no testimony regarding who was behind the eyewitness's fear of reprisals. No further reference was made to this statement throughout the rest of the trial, including closing arguments.

As with other matters in which abuse of discretion is the issue, we will uphold the trial court's ruling if it was within the "zone of reasonable disagreement." *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004) (*citing Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). A witness's inadvertent reference to an extraneous offense generally can be cured by a prompt instruction to disregard. *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). We presume that a jury will obey a trial court's instruction to disregard evidence that has not been admitted. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). An exception exists when the reference to an extraneous offense was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *Rojas*, 986 S.W.2d at 250.

The officer's statement here was not of a nature calculated to inflame the jury, or of such damning character as to be impossible to remove from the jurors' minds. Rather, this statement was adequately addressed by a sustained objection and an instruction to disregard. *See Rojas*, 986 S.W.2d at 250-51; *Sperling v. State*, 924 S.W.2d 722, 724-25 (Tex. App.—Amarillo 1996, pet. ref'd) (reference by State's witness to defendant's prior incarceration during direct examination did not require mistrial); *Rudd v. State*, 921 S.W.2d 370, 373-74 (Tex. App.—Texarkana 1996, pet. ref'd) (reference by State's expert witness to defendant's arrest at age seven during direct examination did not require mistrial); *Kirkland v. State*, 786 S.W.2d 557, 562 (Tex. App.—Austin 1990, no pet.) (reference by police officer to defendant's failure to appear in court for traffic citations during State's direct examination did not require mistrial). In cases such as

this, we must assume that the jury properly heeded the instructions of the trial court. *See Ladd*, 3 S.W.3d at 567.

The officer's reference to an extraneous offense was cured by Caldwell's objection and by the trial court's instruction to disregard. Caldwell has not demonstrated that the jury did not heed the trial court's instruction. Therefore, the trial court did not abuse its discretion in denying Caldwell's motion for mistrial.

*Conclusion*

We find that the evidence is legally and factually sufficient to support the conviction of Caldwell. We find that the trial court did not abuse its discretion in denying Caldwell's motion for mistrial. We affirm the judgment of conviction.


                                                    TOM GRAY
                                                    Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed November 4, 2009
Do not publish
[CR25]