In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00232-CR


______________________________




ELVIS RAY WALKER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Fifth Judicial District Court


 Cass County, Texas


Trial Court No. 2008F00182




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Elvis Ray Walker's Cass County jury trial for bail jumping (1) centered around his claim that
he did not get notice of his arraignment hearing on an earlier charge of burglary and, therefore, failed
to appear for that hearing. Convicted on the bail-jumping charge and sentenced to five years'
confinement and a $5,000.00 fine, Walker urges on appeal, in four points of error, (2) that the evidence
is legally and factually insufficient to show that his failure to appear was intentional or knowing and
that the evidence is legally and factually insufficient to support the jury's rejection of his defense of
reasonable excuse, that is, lack of notice. Because we find the evidence legally and factually
sufficient to support both challenged aspects of the verdict, we affirm the judgment of the trial court.

 A person commits the crime of bail jumping if he or she has been "lawfully released from
custody, with or without bail, on condition that he subsequently appear" and then "intentionally or
knowingly fails to appear in accordance with the terms of his release." Tex. Penal Code Ann.
§ 38.10(a) (Vernon 2003). "It is a defense to prosecution" for bail jumping "that the actor had a
reasonable excuse for his failure to appear in accordance with the terms of his release." Tex. Penal
Code Ann. § 38.10(c) (Vernon 2003). If the underlying offense for which the accused failed to
appear is classified as any degree of felony offense, then this new charge is a third-degree felony. 
Tex. Penal Code Ann. § 38.10(f) (Vernon 2003). Otherwise, the new charge is a misdemeanor
punishable by a fine only. Tex. Penal Code Ann. § 38.10(e) (Vernon 2003). Bail jumping is a
result-of-conduct oriented offense because the crime is defined in terms of one's objective to produce
a specific result. See Roberts v. State, 273 S.W.3d 322, 328-29 (Tex. Crim. App. 2008)
(summarizing methodology used to classify crime as conduct oriented); Gonzales v. State, 270
S.W.3d 282, 288 (Tex. App.--Amarillo 2008, pet. ref'd) (same). The mens rea element of the
offense modifies the conduct element of the offense, so it is the accused's conduct that must be done
with the requisite "intentional" or "knowing" culpable mental state. Cf. Landrian v. State, 268
S.W.3d 532, 537 (Tex. Crim. App. 2008) (discussing aggravated assault as result-oriented offense
and noting, "The precise act or nature of conduct in this result-oriented offense is inconsequential.
'What matters is that the conduct (whatever it may be) is done with the required culpability to effect
the result the Legislature has specified.'").

Standards of Review

 "The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt." Young v. State,
242 S.W.3d 192, 197 (Tex. App.--Tyler 2007, no pet.) (referencing Jackson v. Virginia, 443 U.S.
307, 320 (1979); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). In examining
evidentiary sufficiency, we examine the evidence in the light most favorable to the verdict. Jackson,
443 U.S. at 320; Johnson, 871 S.W.2d at 186. "A successful legal sufficiency challenge will result
in rendition of an acquittal by the reviewing court." Young, 242 S.W.3d at 197 (referencing Tibbs
v. Florida, 457 U.S. 31, 41-42 (1982)). Legal sufficiency is measured "by the elements of the
offense as defined by the hypothetically correct jury charge for the case." Malik v. State, 953 S.W.2d
234, 239-40 (Tex. Crim. App. 1997). (3) In reviewing the legal sufficiency of evidence to support
rejection of a defense, we examine all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
and also could have found against the defendant on the self-defense issue beyond a reasonable doubt.
 Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

 A factual sufficiency review requires us to assess all the evidence adduced at trial in a neutral
light. Grotti, 273 S.W.3d at 280 (citing Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006)). We must then determine whether the jury was rationally justified in finding the accused
guilty beyond a reasonable doubt. Id. (citing Watson, 204 S.W.3d at 426). "Evidence can be
factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak
that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence
is outweighed by the great weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust." Id. (citing Roberts v. State, 220 S.W.3d 521, 524 (Tex.
Crim. App. 2008); Watson, 204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 11; and referencing
Castillo v. State, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007)). To hold that the evidence is
factually insufficient, we must be able to state objectively that the verdict is against the great weight
and preponderance of the evidence. Id.; Roberts, 220 S.W.3d at 524; Watson, 204 S.W.3d at 417. 
Like a legal sufficiency review, a factual sufficiency review requires that the evidence be measured
under the framework of the hypothetically correct jury charge. Id. at 280-81; Wooley v. State, 273
S.W.3d 260, 261 (Tex. Crim. App. 2008). A factual sufficiency challenge to a verdict implicitly
rejecting a defense requires us to review all of the evidence in a neutral light and ask whether the
State's evidence, if taken alone, is too weak to support the finding and whether the proof of guilt,
although adequate if taken alone, is against the great weight and preponderance of the evidence. 
Zuliani v. State, 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003). Evidence that supports a verdict
is not rendered insufficient merely because the defendant presented a different version of events or
conflicting evidence. Anderson v. State, 701 S.W.2d 868 (Tex. Crim. App. 1985).

 The hypothetically correct jury charge applicable in this bail-jumping case would require
proof that Walker (1) had been lawfully released from custody with or without bail (2) on a felony
charge (3) on the condition that he subsequently appear in court on that charge, and Walker thereafter
(4) intentionally or knowingly (5) failed to appear in court in accordance with the terms of that
release. See Tex. Penal Code Ann. § 38.10(a), (f). (4) If, however, the jury affirmatively found that
Walker had a reasonable excuse for not appearing in court in accordance with the terms of his
release, then the jury would be required to acquit Walker. Tex. Penal Code Ann. § 38.10(c). The
only elements of proof in issue here are the intentional or knowing aspect of the failure to appear and
reasonable-excuse defense.

The Evidence

 Walker was released from jail February 26, 2007, on a $5,000.00 bail bond under a pending
charge of burglary. The bond was posted by Pam Huddleston, the owner of Tri-State Bail Bonds. 
Walker's bail bond did not list his next court date. The Cass County District Attorney's Office
subsequently mailed to Walker and his bondsman the notices of Walker's arraignment setting, but
Walker failed to appear. 

 Huddleston testified that, after she bailed Walker out of the Cass County Jail February 26,
2007, Walker never again contacted Huddleston. Huddleston received a notice in the mail from the
Cass County District Attorney's Office some time after May 22, 2007, that Walker's burglary case
was scheduled for an upcoming arraignment hearing. Huddleston then mailed a postcard notice of
that arraignment hearing date to Walker and later spoke with Walker's aunt (Ophelia James), who
confirmed that Walker had received the postcard and would soon contact Huddleston about the
upcoming hearing. (5) Walker did not contact Huddleston. Walker also subsequently missed the
arraignment hearing on his burglary charge. The postcard notice mailed by Huddleston to Walker
was never returned as "undeliverable" to Huddleston by the post office. Huddleston mailed the
postcard notice to Walker at what she understood to be his home address on Walker Street in Queen
City, Texas. 

 The  bail  bond  for  Walker's  felony  burglary  charge  (admitted  into  evidence  as  State's
Exhibit 1) bears Walker's signature and states that he is entering into an obligation (as a part of the
bail contract) "to appear before the proper court of Cass County, Texas, as he/she may be directed." 

 Patricia Hollomon is a secretary with the Cass County District Attorney's Office. Her many
responsibilities include the duty to schedule the felony arraignment dockets for the district court and
to send notifications for those dockets to the interested parties. Hollomon testified she mailed a
notice May 11, 2007, to Walker at his last known address (407 Walker Street in Queen City, Texas)
informing him that his felony burglary case was scheduled for arraignment May 30, 2007, in the 
District Courtroom. The notice was also sent to Huddleston. Hollomon testified Walker did not
appear for his May 30 arraignment hearing. Hollomon also told the jury that the notice she mailed
to Walker was never returned as "undeliverable" by the post office, while other notices for this same
arraignment docket did come back.

 Bill Page works as the criminal investigator for the Cass County District Attorney. Page, a
former Cass County Sheriff's Deputy, described the process of "booking in" someone to the Cass
County Jail. Page also testified that he has known Walker since Page was a teenager and identified
the accused in open court. According to Page, Walker lives with his mother in a house located on
Walker Lane in Queen City, Texas. Page also reviewed Walker's book-in records for the underlying
burglary charge; the sheriff's department's records indicated Walker, at the time of his arrest for that
burglary, provided a mailing address that was for a house located on Walker Lane in Queen City. 

 Finally, Walker testified in his own defense. Walker acknowledged that he lived at a house
located on Walker Lane in Queen City, Texas. Walker said he receives his mail at a post office box
in that town, rather than receiving mail at his home. According to him, he had never received mail
at the house during the entire time he had lived there. He also said there was not a mailbox located
in front of that home. Walker admitted that he has been previously convicted of criminal conduct,
including two felony convictions for which he had served two years' imprisonment. (6) He denied ever
receiving notice of the arraignment hearing scheduled for May 30, 2007. 

 Walker also told the jury that the mailing address he gave his bondsman was for a post office
box in Queen City. Walker, however, received nothing at his post office box from his bondsman or
anyone else regarding the May 30 arraignment hearing for his burglary charge. Instead, he did not
find out about the arraignment hearing until he received a telephone call from the district attorney's
office following the arraignment date. On cross-examination, Walker agreed that, if James said to
Huddleston that Walker had received notice of the May 30 arraignment hearing, that such a
statement would likely be truthful. Walker also admitted he had failed to keep in touch with
Huddleston (the bondsman) after being bailed out of jail. 

Analysis

 Assessing this evidentiary record against the challenged element of proof that Walker
intentionally or knowingly failed to appear in court in accordance with the terms of his release on
bail, we conclude that factually and legally sufficient evidence supports the jury's conclusion that
Walker intentionally or knowingly failed to appear, because the jury heard testimony that two
different parties mailed formal notices to the address where Walker lived (no evidence suggests that,
in the small town of Queen City, Texas, mail addressed to 407 Walker Street would not be delivered
to 407 Walker Lane); that none of those notices came back as "undeliverable"; that Walker's bail
bondsman talked with his aunt, who in turn said Walker had received actual notice of the
arraignment docket setting and would be subsequently contacting the bondsman before that hearing
date. While Walker's testimony directly contradicts the inferences that may be drawn from the other
witnesses' testimony, such contradictions in the evidentiary record are best resolved by the jury. We
overrule Walker's first and second issues.

 We similarly conclude legally and factually sufficient evidence supports the jury's decision
to reject Walker's defense of having a reasonable excuse for failing to appear. Walker's defense
depended entirely on whether the jury found him to be a credible witness who was more believable
than the State's witnesses. By its verdict, the jury chose to believe the State's witnesses rather than
Walker. Because the jury is in the best position to evaluate witness demeanor and credibility, and
because we cannot say the great weight and preponderance of the evidence requires us to conclude
the jury reached an improper conclusion in rejecting his defense of reasonable excuse, we cannot say
the evidence is legally and factually insufficient to support the jury's rejection of that defense. We
overrule Walker's third and fourth points of error.

 Finding no error in the proceedings below, we affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 17, 2009

Date Decided: June 23, 2009


Publish


1. The grand jury's indictment alleged Walker 


 did  then  and  there  after  being  lawfully  released  from  custody  on  pending
felony . . . charge on condition that he subsequently appear in court, intentionally or
knowingly fail to appear in accordance with the terms of his release, to wit: 
[photographic image of Walker's bail bond for his burglary charge] against the peace
and dignity of the state.
2. In his first and second points of error, Walker contends the evidence is legally and factually
insufficient to support the conclusion that he intentionally or knowingly failed to appear. Walker's
third and fourth points of error urge legal and factual insufficiency of the evidence relative to the
rejection of his reasonable-excuse defense, which was based on his alleged lack of notice.
3. The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does
not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant was tried." Malik,
953 S.W.3d at 240; see also Reese v. State, 273 S.W.3d 344, 346 (Tex. App.--Texarkana 2008, no
pet.) (citing Grotti v. State, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008)).
4. The indictment's allegation that Walker was released on a felony charge would be necessary
to establish that the indicted offense was a felony rather than a misdemeanor, thereby invoking the
district court's subject-matter jurisdiction. See Kirkpatrick v. State, 279 S.W.3d 324 (Tex. Crim.
App. 2009). Thus, the applicable hypothetically correct jury charge--which must be authorized by
the indictment--should also contain that subject-matter-jurisdiction-invoking element.
5. Walker did not object to this hearsay statement. See Tex. R. Evid. 801(a), 802. The jury
was therefore permitted to consider this hearsay evidence for any purpose. See Fernandez v. State,
805 S.W.2d 451, 455-56 (Tex. Crim. App. 1991) ("Having failed to object, appellant must be
prepared to accept the concept that hearsay could be considered by the trier of fact as probative
evidence, to be assessed and weighed along with, and equal to, the other evidence admitted at trial.");
see also Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (hearsay evidence must
be considered for its probative value in analyzing evidentiary sufficiency). 
6. One may impeach witness credibility with evidence of a conviction for felony or crime of
moral turpitude. Tex. R. Evid. 609(a).


#160;       Proof of Use of Deadly Weapon
            Coleman also contends the evidence is legally insufficient to prove that the deadly weapon
used or exhibited during the assault was a firearm, because the evidence shows he used or exhibited
a "gun," and the two terms are not necessarily interchangeable. As pointed out by the State, a firearm
is, per se, a deadly weapon. However, a "gun" is not necessarily a firearm. Tex. Pen. Code Ann.
§ 46.01(3) (Vernon 2003) defines a firearm as "any device designed, made, or adapted to expel a
projectile through a barrel by using the energy generated by an explosion or burning substance or any
device readily convertible to that use." We have reviewed the testimony. Although, obviously, the
shorthand term "gun" could mean anything from a grease gun to a BB gun to an electron gun to a toy
gun, the testimony of those looking down its barrel in this case consistently described it as a revolver,
probably .38 caliber. Melvin stated that it was a "real gun" and that it "looks to be like maybe a .38
special . . . ." Richard testified "Demetrice came up with a .45 or a .38 or something." That is
evidence from which a jury could conclude the device was a gun of the firearm variety. There is no
evidence to the contrary. The evidence is factually and legally sufficient to allow the jury to
conclude the device was a firearm. The contention of error is overruled.
Jury Instruction
            A.        Conduct Elements
            Coleman next contends the trial court erred by failing to properly instruct the jury on the
conduct elements applicable to this offense. The jury charge read:
A person acts intentionally, or with intent, with respect to a result of his
conduct when it is his conscious objective or desire to cause the result.
 
A person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the result.

            As discussed above, assault by threat is treated as a "nature of conduct" offense, rather than
a "result of conduct" offense. The instruction is thus erroneous, because the wrong portion of the
definition of those two forms of intent was given to the jury by the court. See Tex. Pen. Code Ann.
§ 6.03 (Vernon 2003); Guzman, 988 S.W.2d at 887.   
            The portion of Section 6.03 that would properly have reflected the evidence and charge in
this case reads as follows:
(a) A person acts intentionally, or with intent, with respect to the nature of
his conduct . . . when it is his conscious objective or desire to engage in the conduct
. . . .
 
(b) A person acts knowingly, or with knowledge, with respect to the nature
of his conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.

Tex. Pen. Code Ann. § 6.03.
            However, there was no objection to the charge. The standard of review for errors in the jury
charge depends on whether the defendant properly objected. Mann v. State, 964 S.W.2d 639, 641
(Tex. Crim. App. 1998); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on
reh'g); Gornick v. State, 947 S.W.2d 678, 680 (Tex. App.—Texarkana 1997, no pet.). If a proper
objection was raised, reversal is required if the error "is calculated to injure the rights of defendant." 
Almanza, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible
unless it is harmless. Id. If a defendant does not object to the charge, reversal is required only if the
appellant shows this Court that harm is so egregious the appellant did not receive a fair and impartial
trial. Rudd v. State, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd). 
            Egregious harm consists of errors affecting the very basis of the case or that deprive the
defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or
punishment clearly and significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692 (Tex.
Crim. App. 1991); Hall v. State, 937 S.W.2d 580, 583 (Tex. App.—Texarkana 1996, pet. ref'd). We
determine harm in light of the entire jury charge, the state of the evidence, including contested issues
and the weight of the probative evidence; the argument of counsel; and any other relevant
information revealed by the record as a whole. Mann, 964 S.W.2d at 641; Rudd, 921 S.W.2d at 373. 
The purpose is to illuminate the actual, not just the theoretical, harm to the accused. Rudd, 921
S.W.2d at 373; Hines v. State, 978 S.W.2d 169, 175 (Tex. App.—Texarkana 1998, no pet.).
            In this case, our review of the record thus focuses on whether the jury could conclude
Coleman intended to cause or knowingly caused in the victim a reasonable apprehension of
imminent bodily injury. There is evidence of a fear of imminent injury. The mere presence of a
deadly weapon, under proper circumstances, can be enough to instill fear and threaten a person with
bodily injury. DeLeon v. State, 865 S.W.2d 139, 142 (Tex. App.—Corpus Christi 1993, no pet.). 
As previously discussed, in light of the fact that Coleman was brandishing a pistol, and that another
brother had already been shot by Coleman's friend, we cannot say that, under the hypothetically
correct jury charge construct, the evidence is insufficient to support a finding of guilt based on the
nature of Coleman's conduct or that egregious harm has been shown. The contention of error is
overruled.
            B.        That Intent might be Inferred
            Coleman next contends the trial court erred by including language in the charge stating that
"intent may be inferred from acts done, words spoken, or both." He takes the position that this
constitutes a comment on the weight of the evidence and that he therefore suffered egregious harm
because of the inclusion of this language in the charge. The language was taken from Tex. Pen.
Code Ann. § 6.03(a), (b). Coleman directs our attention to cases in which a court selected a single
inference and directed the jury's attention to this language in connection with that inference, and in
which the court concluded that doing so was error because it suggested the court's desired result to
the jury. See Browning v. State, 720 S.W.2d 504, 507 (Tex. Crim. App. 1986). 
            The court in this case provided a statutory definition to inform the jury it could draw
inferences from the evidence. We addressed this issue directly in Peterson v. State, 942 S.W.2d 206
(Tex. App.—Texarkana 1997, pet. ref'd). In that case, we recognized that the Texas Court of
Criminal Appeals had addressed the propriety of instructing a jury on inferences, holding that, "when
the trial court, the only source of law the jury has, picks out only one such inference and instructs
the jury that that one, though rebuttable, is a presumption provided by law, the court gives the force
of law to that one possible inference." Browning, 720 S.W.2d at 507. We recognized that the court
had concluded singling out one inference would be improper because it constitutes a comment on
the weight of the evidence.


 
            We then noted that the Texas Court of Criminal Appeals reviewed a jury charge similar to
the charge in Peterson, and in the present case, in Garcia v. State. The trial court in Garcia
instructed the jury that "intent or knowledge may be inferred by acts done or words spoken." Garcia
v. State, 919 S.W.2d 370, 396 (Tex. Crim. App. 1996). We recognized that both Garcia and 
Peterson had timely objected to the included phrase as an impermissible comment on the evidence. 
The court assumed, without addressing the merits of Garcia's assertion, it was error to include the
disputed phrase in the jury charge. Id.
            Because of the court's ruling, we concluded we were constrained to hold that the charge in
Peterson, 942 S.W.2d at 207–08, was an improper comment on the weight of the evidence and we
moved on to a harm analysis. 
            Since that time, several other courts reviewed this same scenario and came to differing
conclusions. The San Antonio and Fort Worth courts tended to agree with our initial conclusion that
the jury should not be given such an instruction.


 The Dallas court held to the contrary in Brown v.
State, 92 S.W.3d 655, 663 (Tex. App.—Dallas 2002, pet. granted), reasoning that, because Garcia
did not rule on the question, it was not controlling, and concentrated on the logic employed in the
cases predating Garcia, which focused on the question whether the instruction improperly directed
the jury's attention to particular evidence.
            The Texas Court of Criminal Appeals has now released its opinion in Brown v. State, No.
0059-03, 2003 Tex. Crim. App. LEXIS 910 (Tex. Crim. App. Dec. 3, 2003). In that opinion, it has
redirected the discussion to the central point, which is whether giving the instruction constitutes an
improper judicial comment. In connection with how to determine if the instruction reaches that
level, the court has devised a sliding "improper-judicial-comment" scale for our use in analyzing the
issue. The court delineated a sort of scale between the high end—a comment that imposes a
mandatory presumption on a jury's decision-making process, through instructions on nonstatutory
presumptions like those used by appellate courts to analyze evidence for sufficiency or singling out
a specific type of evidence and telling the jury it may infer an element of the crime from that
evidence, to the low end—that being an instruction neutral in itself, but that does not directly connect
to specific evidence. Brown, 2003 Tex. Crim. App. LEXIS, 910 at *23.
            After this discussion, the court then reviewed an instruction reading: "intent or knowledge
may be inferred by acts done or words spoken." The court reasoned it was a "benign"
instruction—providing no presumption that could be improperly applied by the jury and that also did
not link itself directly to any specific set of facts or pluck out any particular piece of evidence for its
application. The court decided that the instruction was marginally on the wrong side of the scale
because it was simply unnecessary and failed to clarify the law for the jury, and that it was indeed
improper. Therefore, the court found error in giving the instruction to the jury, but further held such
error was not harmful. 
            The instruction in this case is not materially different. It reads: "Intent may be inferred from
acts done, words spoken, or both." Thus, we must also find error in this case. We now turn to a
review of harm. The standard of review for errors in the jury charge depends on whether the
defendant properly objected. Mann, 964 S.W.2d at 641; Almanza, 686 S.W.2d at 171; Gornick, 947
S.W.2d at 680. If a proper objection was raised, reversal is required if the error "is calculated to
injure the rights of defendant." Almanza, 686 S.W.2d at 171. In other words, an error that has been
properly preserved is reversible unless it is harmless. Id. If a defendant does not object to the
charge, reversal is required only if the harm is so egregious the defendant has not had a fair and
impartial trial. Rudd, 921 S.W.2d at 373. 
            Where there has been no objection, we will reverse only if the appellant has shown that the
error caused him or her egregious harm. Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim. App.
1994); Peterson, 942 S.W.2d at 208. In this case, Coleman argues that the instruction constitutes
a comment on the weight of the evidence, and as submited, assumes the existence of an element of
the offense and instructs the jury as to what facts support that conclusion. Therefore, he suggests,
the instruction invited the jury to give more weight to the testimony of the State's witnesses, because
they were the only witnesses to testify about matters from which intent could be inferred (since the
defendant testified he did not commit the act). 
            However, that same situation also existed in Brown. The court found, even in a situation
where the claimed error was preserved by objection, that the instruction was "mild, neutral, and an
obvious common-sense proposition." Brown, 2003 Tex. Crim. App. LEXIS, at 910 *23. The court
concluded the error was not in any sense harmful under Almanza and affirmed. If this instruction
did not meet the test of causing some harm to the defendant in Brown, the same instruction here
cannot constitute egregious harm. We find the error to be harmless. 
            We affirm the judgment of the trial court.



                                                                        Jack Carter
                                                                        Justice

Date Submitted:          December 10, 2003
Date Decided:             January 7, 2004

Do Not Publish