ACCEPTED
06-14-00131-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/24/2015 10:26:34 PM
DEBBIE AUTREY
CLERK

No. 06-14-00131-CR
Trial Court No. 12F0117-202

IN THE COURT OF APPEALS
FOR THE SIXTH SUPREME JUDICIAL DISTRICT
AT TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
3/25/2015 10:35:00 AM
DEBBIE AUTREY
Clerk

**Cornell McHenry,**                                                            *Appellant*

**v.**

**The State of Texas,**                                                             *State*

Appealed from the 202nd Judicial District Court
Bowie County, Texas



BRIEF FOR THE STATE
The State Does Not Request Oral Argument

**Respectfully submitted:**

**Jerry D. Rochelle**
*Criminal District Attorney*
Bowie County, Texas
601 Main Street
Texarkana, Texas 75501

By:     **Lauren N. Sutton**
*Assistant District Attorney*
601 Main Street
Texarkana, Texas 75501
Texas Bar No. 24079421
Lauren.sutton@txkusa.org
**Attorneys for the State**

| | | |
|---|---|---|
| Cornell McHenry, | § | |
| *Appellant* | § | |
| | § | No. 06-14-00131-CR |
| v. | § | |
| | § | |
| The State of Texas, | § | BRIEF FOR THE STATE |
| *State* | § | |
| | § | |

## Identity of the Parties

The following is a complete list of all the parties to the trial court's judgment as required by the provisions of Rule 38.2(a) of the Texas Rules of Appellate Procedure:

1. Defendant and Appellant:

   **Cornell McHenry**

2. Attorneys for Appellant at trial:

   **Rick Shumaker**
   **Chad Crowl**
   **Public Defender's Office**
   424 W. Broad Street
   Texarkana, Texas 75501

3. Attorney for appellant on appeal:

   **Bart Craytor**
   Lesher & McCoy
   126 W. Second St.

1

Mount Pleasant, Texas 75455

4. Attorney for the State of Texas at trial:

**Mike Shepherd**
**Lauren N. Sutton**
Assistant District Attorneys
601 Main Street
Texarkana, Texas 75501

5. Attorney for the State of Texas on Appeal:

**Lauren N. Sutton**
Assistant District Attorney
601 Main Street
Texarkana, Texas 75501
Lauren.sutton@txkusa.org

6. Presiding Judge at trial:

**Honorable Leon F. Pesek Jr.**
District Court Judge
202nd Judicial District
Bowie County, Texas
Bi-State Justice Building
100 North State Line Avenue
Texarkana, Texas 75501

# Table of Contents

Identity of the Parties and Counsel ........................................................................ 1-2

Table of Contents .................................................................................................... 3-4

Index of Authorities ................................................................................................ 5-7

Statement of the Case ................................................................................................. 8

Reply to Points of Error .............................................................................................. 9

Summary of the Argument.................................................................................... 10-12

Argument............................................................................................................... 12-41

       Reply to Point of Error Number One ............................................ 12-15
       Sufficient evidence was presented to corroborate the co-
       defendant's testimony to sustain the Appelllant's conviction.

       Reply to Points of Error Number Two and Three......................... 16-22
       Evidence was sufficient to prove the elements of the offense
       beyond a reasonable doubt.

       Reply to Point of Error Number Four ........................................... 22-29
       The jury was given a proper accomplice witness instruction, but
       any error in submitting the issue of accomplice status to the jury
       did not egregiously harm the Appellant.

       Reply to Point of Error Number Five........................................... 29-34
       The trial court did not abuse its discretion in excusing a juror
       due to her fear of retaliation.

Prayer for Relief.......................................................................................................35

Certificate of Compliance .........................................................................................36

Certificate of Service ......................................................................................37

# Index of Authorities

**Cases**

*Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1984).......................................17

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).....................16,17,18,23

*Bailey v. State*, 867 S.W.2d 42 (Tex. Crim. App. 1993) ..........................................18

*Blackman v. State*, 350 S.W.3d 588 (Tex. Crim. App. 2011)...................................11

*Boones v. State*, 170 S.W.3d 653 (Tex. App.—Texarkana 2005, no pet.) ..............17

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .........................................9

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).............................10

*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).........................................9

*DeBlanc v. State*, 799 S.W.2d 701 (Tex.Crim.App.1990)........................................20

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995) ................................16,23

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007) .......................................19

*Evans v. State*, 202 S.W.2d 158 (Tex. Crim. App. 2006)........................................11

*Francis v. Franklin*, 471 U.S. 307 (1985) ..............................................................21

*Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) ......................................6,7

*Hall v. State*, 161 S.W.3d 142, 149 (Tex. App.—Texarkana 2005, pet. ref'd).........7

*Herron v. State*, 86 S.W.3d 621 (Tex.Crim.App. 2002)..........................................21

*Hutch v. State*, 922 S.W.2d 116 (Tex. Crim. App. 1996).........................................18

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)..........................................................10

*Jones v. State*, 195 S.W.3d 279 (Tex.App.–Fort Worth 2006, no pet.)....................21

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ...........................10,11

*McGoldrick v. State*, 682 S.W.2d 573 (Tex. Crim. App. 1985) .............................12

*Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993)................................7

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005)......................................16,23

*Parker v. Randolph*, 442 U.S. 62 (1979) ................................................................21

*Rankin v. State*, 974 S.W.2d 707 (Tex. Crim. App. 1996) ......................................26

*Rankin v. State*, 995 S.W.2d 210 (Tex. App.—Houston  [14th Dist.] 1999) ...........26

*Rudd v. State*, 921 S.W.2d 370 (Tex. App. – Texarkana 1996, pet. ref'd)..............17

*Saunders v. State*, 817 S.W.2d 688 (Tex. Crim. App. 1991)..............................17, 21

*State v Medina*, 7 S.W.3d 633 (Tex, Crim. App. 1999) ..........................................18

*Swan v. State*, 76 S.W. 464 (Tex. Crim. App. 1903)..............................................19

*Taylor v. State*, 106 S.W.3d 827 (Tex. App.—Dallas 2003, no pet.)......................13

*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) ...........................10

*Wright v. State*, 401 S.W.3d 813 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)12

*Zollicoffer v. State*, 16 Tex. Ct. App. 312 (1884) ..................................................19

**Texas Code of Criminal Procedure**

Texas Code of Criminal Procedure art. 38.14 ......................................................6,20

**Texas Penal Code**

Texas Penal Code § 1.07(a)(39)..................................................................................11

**Texas Health & Safety Code**

Texas Health & Safety Code § 481.115 ...................................................................11

## Statement of the Case

Appellant, Cornell McHenry, was found guilty of Possession of a Controlled Substance. The punishment range was enhanced to a first degree due to Appellant's prior felony conviction and the jury assessed punishment at forty-five (45) years in the Institutional Division of the Department of Criminal Justice, and the judge sentenced him accordingly.

Appellant then perfected appeal to this Honorable Court. He now appeals the verdict of the trial court on five points of error.

# Reply to Points of Error

REPLY TO POINT OF ERROR NUMBER ONE:

Sufficient evidence was presented to corroborate the co-defendant's testimony to sustain the Appelllant's conviction

REPLY TO POINTS OF ERROR NUMBER TWO AND THREE:

Evidence was sufficient to prove the elements of the offense beyond a reasonable doubt.

REPLY TO POINT OF ERROR NUMBER FOUR:

The jury was given a proper accomplice witness instruction, but any error in submitting the issue of accomplice status to the jury did not egregiously harm the Appellant.

REPLY TO POINT OF ERROR NUMBER FIVE:

The jury was given a proper limiting instruction regarding extraneous offenses in the court's charge. Any error in not giving a contemporaneous instruction at the time the evidence was offered was harmless.

# Summary of the Argument

Sufficient evidence was presented to corroborate the co-defendant's testimony to sustain the Appelllant's conviction

Viewing the evidence presented at trial in a light most favorable to the jury verdict and eliminating the accomplice's testimony, the corroboration of the accomplice testimony was sufficient. While the nonaccomplice evidence may not establish guilt beyond a reasonable doubt, or not prove all the elements of the alleged offense by itself, it does tend to connect the defendant with the commission of the offense as required. Therefore, the corroboration of the accomplice testimony was sufficient.

REPLY TO POINTS OF ERROR NUMBER TWO AND THREE:

Evidence was sufficient to prove the elements of the offense beyond a reasonable doubt.

Viewing the evidence presented at trial in the light most favorable to the jury's verdict, this Court can determine a rational jury could have found the essential elements of the offense beyond a reasonable doubt.

REPLY TO POINT OF ERROR NUMBER FOUR:

>The jury was given a proper accomplice witness instruction, but any error in submitting the issue of accomplice status to the jury did not egregiously harm the Appellant.

The jury instructions submitted DeQueener Mitchell's status as an accomplice to the jury and required them to find her testimony corroborated by other evidence. Even though the trial court submitted the issue to the jury, no rational jury would have found that she was not an accomplice to the crime. Submitting the accomplice witness issue to the jury did not result in egregious harm to Appellant. Taking into account the charge itself, the state of the evidence including contested issues and the weight of the probative evidence, arguments of counsel, and any other relevant information revealed by the record of the trial as a whole, the Appellant did not suffer egregious harm.

REPLY TO POINT OF ERROR NUMBER FIVE:

>The jury was given a proper limiting instruction regarding extraneous offenses in the court's charge. Any error in not giving a contemporaneous instruction at the time the evidence was offered was harmless.

In his fifth point of error, the Appellant contends the trial court erred when it did not give a limiting instruction at the admission of extraneous offenses and failed to instruct the jury to disregard the evidence as a matter of law. However, the trial court submitted a proper limiting instruction in the jury charge. Because the

Appellant has failed to demonstrate harm in the failure to instruct the jury at the time the evidence was admitted, any error in the timing of the court's instruction to the jury did not affect his substantial rights.

# Argument

# Reply to Point of Error One

*Sufficient evidence was presented to corroborate the co-defendant's testimony to sustain the Appelllant's conviction*

In point of error number one, the Appellant argues that the trial court erred in denying his motion for a directed verdict because the co-defendant's testimony was not adequately corroborated. However, viewing the evidence presented at trial in a light most favorable to the jury verdict and eliminating the accomplice's testimony, the corroboration of the accomplice testimony was sufficient.

## Argument and Authorities

### A. Standard of Review

Under the accomplice witness rule, one cannot be convicted on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed.[1] To determine the sufficiency of corroboration, the reviewing court must view the corroborating evidence in the light most favorable to the jury's verdict.[2] The test for weighing the sufficiency of corroborating evidence is to eliminate from consideration the accomplice's testimony, and then examine the remaining testimony and evidence to determine if there is evidence that tends to connect the defendant with the

---

[1] Texas Code Crim. Proc. art. 38.14.
[2] *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).

commission of the offense.[3] The nonaccomplice evidence does not have to directly link the accused to the crime, does not have to establish guilt beyond a reasonable doubt, and need not prove all the elements of the alleged offense.[4]

## B. Application of Law to Facts

Viewing the evidence presented at trial in a light most favorable to the jury verdict and eliminating the accomplice's testimony, the corroboration of the accomplice testimony was sufficient.

During surveillance conducted in the months leading up to the arrest, officers determined that Cornell McHenry resided at the home at 516 Waterman. (R.R. Vol. 3, p. 37). Believing there was illegal drug activity at the house, officers secured a no-knock search warrant for the house at 516 Waterman based on the probable cause they developed as a result of the surveillance. (R.R. Vol. 3, p. 37).

Officers determined Cornell McHenry was a resident 516 Waterman Street. (R.R. Vol. 3, p. 37). Officer Mark Shermer testified that a confidential informant was used to conduct a controlled buy and the information acquired from the informant helped establish probable cause for a search warrant of the residence. (R.R. Vol. 3, p. 61-62)

---

[3] *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Hall v. State*, 161 S.W.3d 142, 149 (Tex. App.—Texarkana 2005, pet. ref'd).
[4] *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559.

14

Officer Jones testified that after making entry into the residence, the officers found suspected marijuana, methamphetamine, and prescription medications in the house. (R.R. Vol. 3, p. 45, 72, 86). A set of small scales, consistently used by people to weigh out quantities of drugs, were also found. (R.R. Vol. 3, p. 45, 72). There were also plastic baggies commonly used in the packaging of illegal drugs found in the residence. (R.R. Vol. 3, p. 49). In a bedroom there was a flashlight found and inside was hidden the methamphetamine. (R.R. Vol. 3, p. 51). Officer Thomson testified he observed Mr. McHenry walking from the bedroom. (R.R. Vol. 3, p. 87). The officers confirmed that Mr. McHenry lived at the residence by finding mail with his name and the 516 Waterman address. (R.R. Vol. 3, p. 52). Both Cornell McHenry and DeQueener Mitchell were the only two present at the location when the search warrant was executed. (R.R. Vol. 3, p. 69). Mr. McHenry was found to have a large amount of cash on him- $1,395.00—however Mr. McHenry was not employed at the time. (R.R. Vol. 3, p. 70).

## C. Conclusion

While the nonaccomplice evidence may not establish guilt beyond a reasonable doubt, or not prove all the elements of the alleged offense by itself, it does tend to connect the defendant with the commission of the offense as required. Therefore, the corroboration of the accomplice testimony was sufficient.

For these reasons, Appellant's first point of error should be overruled.

15

## Reply to Points of Error Two and Three

*Evidence was sufficient to prove the elements of the offense beyond a reasonable doubt.*

In his second point of error, Appellant complains the evidence is factually insufficient to support his conviction. In the third point of error, Appellant contends the evidence is legally insufficient. However, viewing the evidence presented at trial in the light most favorable to the jury's verdict, this Court can determine a rational jury could have found the essential elements of the offense beyond a reasonable doubt. The State will reply jointly to points of error two and three.

## Argument and Authorities

**A. Standard of Review**

Appellant asserts in his second point of error that there is factually insufficient evidence to support his conviction. In *Brooks v. State*[5], a plurality of the Texas Court of Criminal appeals abolished the factual sufficiency review it had previously announced in *Clewis v. State*[6]. In his third point of error, the Appellant challenges the legal sufficiency of the evidence. This Court should review his point of error for its legal sufficiency to sustain the conviction. In reviewing the

---

[5] 323 S.W.3d 893, 894-96 (Tex. Crim. App. 2010) (4-1-4 decision).
[6] 922 S.W.2d 126 (Tex. Crim. App. 1996).

sufficiency of the evidence, this Court should apply the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard requires a reviewing court to examine all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[7] This standard of review applies to cases involving both direct and circumstantial evidence.[8] The reviewing court should consider everything presented at trial but should not substitute their own judgment regarding the weight and credibility of the evidence for that of the fact finder.[9] Further, an appellate court presumes the fact finder resolved conflicting inferences in favor of the verdict, and defers to that determination.[10] The question is not whether the appellate court itself believes the defendant is guilty beyond a reasonable doubt, but whether viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11]

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.[12] The hypothetically correct jury charge sets out the law, is authorized by the indictment, does not unnecessarily

---

[7] 443 U.S. 307, 319 (1979).
[8] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
[9] *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).
[10] *Clayton*, 235 S.W.3d at 778.
[11] *Jackson*, 443 U.S. at 318-19.
[12] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[13] In this case, Appellant committed possession of a controlled substance if he intentionally possessed a controlled substance.

## B. Application of Law to Facts

To prevail in a case of possession of a controlled substance under Texas Health & Safety Code Section 481.115, the state must prove an individual knowingly or intentionally possessed a controlled substance. To prove possession, the state must prove that Appellant exercised care, custody, control, or management over the controlled substance and that he knew the matter possessed was contraband.[14] Mere presence at the location where drugs are found is insufficient by itself to establish possession.[15] However, presence or proximity to drugs, combined with other direct or circumstantial evidence, may be sufficient to establish care, custody, control or management, if it amounts to more than a strong suspicion or probability.[16]

Texas courts have recognized the following as affirmative links which can be used to establish a defendant's possession of contraband:

---

[13] *Id.*

[14] *See Blackman v. State*, 350 S.W.3d 588, 596 (Tex. Crim. App. 2011); *see also* Tex. Penal Code § 1.07(a)(39).

[15] *Evans v. State*, 202 S.W.2d 158, 161 (Tex. Crim. App. 2006).

[16] *Id.*

(1) The accused's presence when a search is conducted, (1) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (90 whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt.[17]

In addition, it is well established that a person may jointly possess contraband with another and possession does not need to be exclusive.[18]

The testimony at trial established that the Appellant (1) was present when the search was conducted, (2) was in close proximity and had access to the narcotic, (3) there was other contraband found at the home during the search, (4) the Appellant owned or had the right to possess the place where the drugs were found; and (5) the Appellant was found with a large amount of cash on his person. There were at least these five affirmative links which establish the Appellant possessed the methamphetamine. In addition, Mrs. Mitchell testified the methamphetamine belonged to the Appellant, that he sold the drugs, and that she had witnessed him put the drugs into the flashlight. The number of links present is

---

[17] *Wright v. State*, 401 S.W.3d 813, 818-19 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)
[18] *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

not as important as the degree to which they tend to link the defendant to the controlled substance.[19]

At trial, officers of the Texarkana Texas Police Department testified that they executed a search warrant at 516 Waterman Street. (R.R. Vol. 3, p. 41, 59-60, 67, 85). The search warrant was based on months of surveillance done at the location. Officers stopped individuals leaving the residence, and they were found to have drugs in their possession. (R.R. Vol. 3, p. 37, 84). Officers determined Cornell McHenry was a resident 516 Waterman Street. (R.R. Vol. 3, p. 37). Officer Mark Shermer testified that a confidential informant was used to conduct a controlled buy and the information acquired from the informant helped establish probable cause for a search warrant of the residence. (R.R. Vol. 3, p. 61-62)

Officer Jones testified that after making entry into the residence, the officers found suspected marijuana, methamphetamine, and prescription medications in the house. (R.R. Vol. 3, p. 45, 72, 86). A set of small scales, consistently used by people to weigh out quantities of drugs, were also found. (R.R. Vol. 3, p. 45, 72). There were also plastic baggies commonly used in the packaging of illegal drugs found in the residence. (R.R. Vol. 3, p. 49). In a bedroom there was a flashlight found and inside was hidden the methamphetamine. (R.R. Vol. 3, p. 51). The bedroom was the room Mr. McHenry and Ms. Mitchell were seen coming from.

---

[19] *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

(R.R. Vol. 3, p. 73). Officer Thomson testified he observed Mr. McHenry walking from the bedroom. (R.R. Vol. 3, p. 87).The officers confirmed that Mr. McHenry lived at the residence by finding mail with his name and the 516 Waterman address. (R.R. Vol. 3, p. 52). Both Cornell McHenry and DeQueener Mitchell were the only two present at the location when the search warrant was executed. (R.R. Vol. 3, p. 69). Mr. McHenry was found to have a large amount of cash on him- $1,395.00—however Mr. McHenry was not employed at the time. (R.R. Vol. 3, p. 70, 95).

DeQueener Mitchell, the co-defendant, testified that at the time the home was searched, she had been in a relationship with McHenry for about three years. (R.R. Vol. 3, p. 91). She stated that the prescription medication and marijuana found in the home was hers but that the methamphetamine found in the flashlight was not. (R.R. Vol. 93-94). Mitchell testified she had personally seen McHenry put the methamphetamine inside of the flashlight and it was something he commonly did. (R.R. Vol. 3, p. 94). Both Cornell and Mitchell were charged with possession of the marijuana, prescription medication, and methamphetamine. (R.R. Vol. 3, p. 96). Mitchell pled guilty to the charges and was placed on probation. (R.R. Vol. 3, p. 96).

The methamphetamine was found in the house where McHenry was living. Mitchell testified she had seen him hid the methamphetamine in the flashlight.

These links have a strong tendency to connect the Appellant to the contraband found in the home.

## C. Conclusion

The State produced sufficient evidence that would allow a rational juror to conclude that the Appellant knowingly or intentionally exercised care, custody, control, or management over the drugs. Therefore, legally sufficient evidence exists to support Appellant's conviction.

For the above-mentioned reasons, Appellant's second and third points of error should be overruled.

## **Reply to Point of Error Four**

*The jury was given a proper accomplice witness instruction, but any error in submitting the issue of accomplice status to the jury did not egregiously harm the Appellant.*

In his fourth point of error, Appellant argues the trial court erred in failing to instruct the jury that DeQueener Mitchell was an accomplice as a matter of law. Appellant asserts he suffered egregious harm because the jury was not instructed that DeQueener Mitchell was an accomplice as a matter of law. However, the jury instructions submitted Mitchell's status as an accomplice to the jury and required them to find her testimony corroborated by other evidence. There was no evidence

22

presented at trial that DeQueener was not an accomplice. Even though the trial court submitted the issue to the jury, no rational jury would have found that she was not an accomplice to the crime. The non-accomplice evidence is reliable and connected Appellant to possession of the methamphetamine independent of Mitchell's testimony. Submitting the accomplice witness issue to the jury did not result in egregious harm to Appellant. Taking into account the charge itself, the state of the evidence including contested issues and the weight of the probative evidence, arguments of counsel, and any other relevant information revealed by the record of the trial as a whole, the Appellant did not suffer egregious harm.

## Argument and Authorities

### A. Standard of Review

Appellate review of a purported error in the jury charge involves a two-step process. [20] First, the reviewing court must determine whether the jury instruction is erroneous.[21] Second, if error occurred, then an appellate court must analyze that error for harm.[22] In examining the charge for possible error, reviewing courts "must examine the charge as a whole instead of a series of isolated and unrelated statements."[23]

---

[20] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), overruled on other grounds by *Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988).
[21] *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).
[22] *Id.* at 744.
[23] *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

When jury instruction errors occur, review of the charge is under the *Almanza* standard.[24] An erroneous jury charge does not result in automatic reversal of the conviction or punishment.[25] Instead, sufficient harm must have resulted from the error to require reversal.[26]

The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error.[27] When a proper objection is made at trial, reversal is required if the error is "calculated to injure the rights of defendant"—the appellant need only demonstrate "some harm" on appeal.[28] In the case of unpreserved error, reversal is required only when "the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'"[29] "Egregious harm" results from errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive.[30]

In either event, when conducting a harm analysis the reviewing court may consider the following four factors: 1) the charge itself; 2) the state of the evidence

---

[24] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).
[25] *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1984).
[26] *Id.* at 731-32; *Almanza*, 686 S.W.2d at 171.
[27] *Abdnor*, 871 S.W.2d at 732.
[28] *Id.*; see also *Almanza*, 686 S.W.2d at 171.
[29] *Almanza*, 686 S.W.2d at 171; see *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd).
[30] *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.).

including contested issues and the weight of the probative evidence; 3) arguments of counsel; and, 4) any other relevant information revealed by the record of the trial as a whole.[31]

Since error was not preserved, reversal is not required unless "the error is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial' – in short 'egregious harm.'"[32] "Errors which result in egregious harm are those which affect 'the very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally affect a defensive theory'."[33] Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis.[34]

If there is substantial non-accomplice evidence linking the defendant to the offense, any error is harmless.[35] Substantial non-accomplice evidence linked Appellant to the offense. That evidence has been detailed in this brief previously in the State's response to Appellant's points of error one, two, and three. Therefore, the error in failing to instruct the jury that Mitchell was an accomplice as a matter of law did not egregiously harm the Appellant.

---

[31] *Bailey v. State,* 867 S.W.2d 42, 43 (Tex. Crim. App. 1993) (citing *Almanza*).
[32] *Almanza,* 686 S.W.2d at 171; see *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App. – Texarkana 1996, pet. ref'd).
[33] *Hutch v. State*, 922 S.W.2d 116, 171 (Tex. Crim. App. 1996)(quoting *Almanza*)
[34] *Id.*
[35] *State v Medina,* 7 S.W.3d 633, 642 (Tex, Crim. App. 1999)

## B. Application of Law to Facts

Case law indicates that jury submission of a witness's status has long been preferred by the appellate courts.[36] However, later decisions reflect approval of sometimes taking the issue from the jury where the evidence unquestionably shows that a witness is an accomplice.[37] The trial court should instruct the jury that a state witness is an accomplice as a matter of law "when the witness is charged with the same offense as the defendant."[38] The proposed charge stated the issue as giving the determination on DeQueener's witness status to the jury. (C.R. p. 62).

After review of the charge, during the charge conference, the following statements were made:

THE COURT:      We're outside the presence of the jury. We've had an opportunity to review the proposed charge. Any objections?

DEFENSE:        Yes, sir. Judge, we've had an opportunity to review it. There were a couple of changes that we requested that were made and included, so we have no objections at this time.

(R.R. Vol. 3, p. 154).

---

[36] *See Zollicoffer v. State,* 16 Tex. Ct. App. 312 (1884)("It has been the practice in such cases to submit this issue to the jury, and, believing the practice to be a safe and proper one, and in harmony with the spirit of our system of procedure, we are not disposed to change it.").

[37] *See Swan v. State,* 76 S.W. 464, 465 (Tex. Crim. App. 1903).

[38] *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

26

Because this alleged jury charge error was not timely objected to—in fact was agreed to—the higher standard of harm must be established. The Appellant must demonstrate that the error was so egregious and created such harm that it deprived him of a fair and impartial trial.

Although the trial court did not instruct the jury that Mitchell was an accomplice as a matter of law, it did instruct the jury on the law of accomplice testimony, reciting the language of Texas Code of Criminal Procedure Article 38.14 verbatim.[39] Mitchell testified that she had been indicted for her part in the crime. Furthermore, both the State and Appellant's trial counsel repeatedly stated that Mitchell was an accomplice or co-defendant during closing arguments. (R.R. Vol. 3, p. 157-158, 160-161). Based on this record, any reasonable juror would have concluded that Mitchell was an accomplice and applied the trial court's instruction on accomplice testimony accordingly.[40] The evidence at trial that Mitchell was also in possession of the narcotics was unrefuted and unquestioned. That, along with the State's affirmation to the jurors in final argument that Mitchell was a co-defendant, confirm that only an unreasonable jury would find that Mitchell was not an accomplice and consequently would base Appellant's

---

[39] *See* Tex. Code Crim. Proc. art. 38.14.

[40] *See DeBlanc v. State,* 799 S.W.2d 701, 710–11 (Tex.Crim.App.1990) ("Given the unrefuted, unquestioned evidence that [the witness] was an active participant in the murder ... only an unreasonable jury would find that the State's witness was not an accomplice...").

conviction solely upon her testimony. Courts will "presume that jurors, conscious of the gravity of their tasks, attend closely the particular language of the trial court's instructions in criminal cases and strive to understand, make sense of, and follow the instructions given them."[41]

## C. Harm Analysis

Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive."[42] This analysis requires the examination of the strength of non-accomplice evidence by assessing its reliability or believability and the degree to which it connects the defendant to the crime.[43]

As discussed previously in reply to point of error one, two, and three in this brief, the accomplice witness testimony was sufficiently corroborated. The non-accomplice evidence is reliable and connected Appellant to possession of the methamphetamine independent of Mitchell's testimony. Submitting the accomplice witness issue to the jury did not result in egregious harm to Appellant.

---

[41]*Francis v. Franklin,* 471 U.S. 307, 324 n. 9 (1985); *See also Parker v. Randolph,* 442 U.S. 62, 75 n. 7 (1979) ("The rule—indeed, the premise upon which the system of jury trials function under the American judicial system—is that juries can be trusted to follow the trial court's instructions.").

[42] *Herron v. State,* 86 S.W.3d 621, 632 (Tex.Crim.App. 2002), *quoting Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App. 1991); *Jones v. State,* 195 S.W.3d 279, 290 (Tex.App.–Fort Worth 2006, no pet.).

[43] *Herron,* 86 S.W.3d at 632.

Based on the foregoing, this Court can conclude that any error in failing to instruct the jury that Mitchell was an accomplice as a matter of law was not egregiously harmful.

**D. Conclusion**

The issue of whether Mitchell was an accomplice witness was submitted to the jury. However, there the evidence at trial was unrefuted that Mitchell was an accomplice. Therefore, following the jury instructions, any rational juror would require her testimony to be corroborated in order to convict. Submitting the accomplice witness issue to the jury did not result in egregious harm to Appellant.

For the above-mentioned reasons, Appellant's fourth point of error should be overruled.

## Reply to Point of Error Five

*The jury was given a proper limiting instruction regarding extraneous offenses in the court's charge. Any error in not giving a contemporaneous instruction at the time the evidence was offered was harmless.*

In his fifth point of error, the Appellant contends the trial court erred when it did not give a limiting instruction at the admission of extraneous offenses and failed to instruct the jury to disregard the evidence as a matter of law. However, the trial court submitted a proper limiting instruction in the jury charge. (C.R. p. 63-

29

64). When the jury was deliberating, they had been instructed not to consider the evidence for purposes of character conformity. Because the Appellant has failed to demonstrate harm in the failure to instruct the jury at the time the evidence was admitted, any error in the timing of the court's instruction to the jury did not affect his substantial rights.

## Argument and Authorities

### A. Standard of Review

Appellant frames this issue as of one jury instruction error. Appellate review of a purported error in the jury charge involves a two-step process. [44] First, the reviewing court must determine whether the jury instruction is erroneous.[45] Second, if error occurred, then an appellate court must analyze that error for harm.[46] In examining the charge for possible error, reviewing courts "must examine the charge as a whole instead of a series of isolated and unrelated statements."[47] However, a review of the jury charge shows it does include a proper limiting instruction regarding extraneous offenses.

Because there was no error in the jury charge as it relates to the limiting instruction, this type of alleged error is better addressed as a failure of the trial

---

[44] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), overruled on other grounds by *Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988).
[45] *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).
[46] *Id.* at 744.
[47] *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

court to give a limiting instruction contemporaneous with the admission of extraneous evidence.

Texas Rules of Evidence 105 provides that "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." During the trial, Appellant requested that the jury be instructed on the purpose for which they could consider the extraneous offense testimony. The trial court did not give the instruction at the time the evidence was admitted, but gave the instruction in its charge to the jury. This Court must next examine whether any error in the failure of the trial court to give a limiting instruction contemporaneously with the admission of the extraneous offense was harmless.

## B. Harm Analysis

The State sought to introduce evidence through witness Mike Jones that prior to the search performed at Appellant's house, surveillance had been set up at the residence. (R.R. Vol. 3, p. 17). The testimony was that individuals were observed going to the residence, one or more of the occupants would go up to the house, then leave a short time later. (R.R. Vol. 3, p. 18). On a couple of occasions, the cars were stopped leaving and the occupants of the vehicle had methamphetamine in their possession. (R.R. Vol. 3, p. 18). Officer Jones testified he had no personal knowledge from the individuals stopped that went into the residence that they purchased drugs specifically from the Appellant. (R.R. Vol. 3, p. 19). The

31

information gathered from the surveillance gave the officers probably cause and reasonable suspicion to believe drug activity was going on at the residence and gave them a reason to request a search warrant for the house to see if drugs were in the residence. (R.R. Vol. 3, p. 19).

Appellant objected to the evidence at trial as being inadmissible extraneous offense evidence. (R.R. Vol. 3, p. 20-21). The State asserted the surveillance information was being offered to show how the officers developed probable cause to request a search warrant and that there would be no testimony that Appellant was seen dealing drugs at the house. (R.R. Vol. 3, p. 21). The trial court found the evidence was relevant to show the circumstances leading up to the search warrant and further found that the probative value of the evidence outweighed any prejudicial effect. (R.R. Vol. 3, p. 22-23). The court properly limited the testimony and prevented the introduction of any evidence the Appellant was dealing drugs out of the house. (R.R. Vol. 3, p. 23).

Later, over the Defendant's objections, DeQueener Mitchell was allowed to testify that she had personally seen the Appellant sell methamphetamine in the past. (R.R. Vol. 3, p. 94).

During the trial, Appellant objected to the extraneous offense and its relevance. At this point he did not request that the jury be instructed on the purpose for which they could consider the extraneous offense testimony. (R.R. Vol. 3, 94). The trial

court did not give the instruction at the time the evidence was admitted, but gave the instruction in its charge to the jury.

Appellant relies on the Court of Criminal Appeal's decision in *Rankin v. State*[48] for the proposition that it is reversible error for the trial court to give a limiting instruction for the first time during the jury charge. However, on remand, the Houston Court of Appeals held in *Rankin,* 995 S.W.2d 210 that the error in giving limiting instruction in the jury charge, instead of at the time the extraneous offense testimony was admitted, did not affect a substantial right, and thus was not reversible error, where there was no evidence to show that jury formed an opinion prior to the time it began its deliberation.[49]

In the instant case, the trial court submitted a proper limiting instruction in the jury charge. (C.R. p. 63-64). When the jury was deliberating, they had been instructed not to consider the evidence for purposes of character conformity. There is no evidence to show the jury formed an opinion prior to the time it began its deliberation. Additionally, the indictment that was read to the jury was clear which bad act was the basis for the criminal charge against the Appellant.

Because the Appellant has failed to demonstrate harm in the failure to instruct the jury at the time the evidence was admitted, any error in the timing of the court's instruction to the jury did not affect his substantial rights.

---

[48] *Rankin v. State*, 974 S.W.2d 707 (Tex. Crim. App. 1996).
[49] *Rankin v. State,* 995 S.W.2d 210, 215 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

## C. Conclusion

The trial court submitted a proper limiting instruction in the jury charge, even though one was not given to the jury at the time the evidence was introduced. The Appellant did not suffer harm, therefore any error in the timing of when the instruction was given did not affect his substantial rights.

For the above-mentioned reasons, Appellant's fifth point of error should be overruled.

## Prayer for Relief

**WHEREFORE, PREMISES CONSIDERED,** there being legal and competent evidence sufficient to justify the conviction and punishment assessed in this case and no reversible error appearing in the record of the trial of the case, the State of Texas respectfully prays that this Honorable Court affirm the judgment and sentence of the trial court below.

**Respectfully Submitted:**

**Jerry D. Rochelle**
*Criminal District Attorney*
Bowie County, Texas
601 Main Street
Texarkana, Texas 75501
Phone: (903) 735-4800
Fax: (903) 735-4819

_/s/ Lauren N. Sutton_____
By:   Lauren N. Sutton
*Assistant District Attorney*
601 Main Street
Texarkana, Texas 75501
Phone: (903) 735-4800
Fax: (903) 735-4819
Lauren.sutton@txkusa.org

**Attorneys for the State**

## Certificate of Compliance

I, Lauren N. Sutton, certify that, pursuant to Rule 9 of the Texas Rules of Appellate Procedure, Appellee's Brief contains 5,142 words, exclusive of the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

/s/ Lauren N. Sutton
**Lauren N. Sutton**

## Certificate of Service

I, Lauren N. Sutton, certify that I have served a true and correct copy of the foregoing Brief for the State upon Mr. Bart Craytor, Attorney for Appellant, on this the 24th day of March 2015.

\_\_/s/ Lauren N. Sutton_____
**Lauren N. Sutton**